UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHEN ROBINSON, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | CAUSE NO: 1:23-CV-721 |
| ) | |
| MASTEC SERVICES COMPANY, INC., ) | |
| ) | |
| Respondent. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Claimant, Stephen Robinson ("Robinson"), brings this action against Respondent, Mastec Services Company, Inc. ("Respondent"), for unlawfully violating his rights as protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 1981, and the Americans with Disabilities Act ("ADA"), as amended.

**PARTIES**

1. Robinson has resided in Indianapolis, Indiana for all relevant times. He was employed by Respondent to work on projects in and around the Southern District of Indiana.

2. Respondent operates and conducts business within the Southern District of Indiana. Respondent maintains an office and equipment facility in Indianapolis, Indiana.

**JURISDICTION AND VENUE**

3. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 42 U.S.C. § 1988; 42 U.S.C. § 2000e-5(f)(3); 42 U.S.C. § 1981; and 42 U.S.C. § 12117.

4. Robinson was an "employee" within the meaning of 42 U.S.C. § 2000e(f) and 42 U.S.C. § 12111(4).

5. Respondent is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 42

1

U.S.C. § 12111(5)(A);

6.  Robinson satisfied his obligations to exhaust his administrative remedies by first timely filing his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued its "Notice of Right to Sue *(Issued on Request)*." Robinson now files his *Complaint and Demand for Jury Trial* within 90 days after having received his right-to-sue.

7.  Venue is proper in this Court.

## **FACTUAL ALLEGATIONS**

8.  Robinson is a former employee of Respondent.

9.  Robinson was a construction manager with Respondent, based in its Indianapolis, Indiana office.

10. Robinson is, and always has been, an African–American.

11. Robinson's work performance has always met or exceeded Respondent's legitimate performance expectations.

12. Robinson is an individual with a disability, history of disability, and/or was regarded as disabled by Respondent. Robinson's disability affects several major life functions including, but not limited to: walking, physical tasks, driving, taking care of himself, taking care of others, and sleeping. Robinson made Respondent aware of his disability on his application for employment. He also made Respondent, and its managerial personnel, aware of his treatments and the effects of those treatments on multiple occasions.

13. Robinson's role at Respondent included working on the AT&T fiber project – in and around Indianapolis - as a construction manager. In so doing, Robinson was required to work closely with team members at AT&T and routinely had phone calls / meetings with those

individuals.  Of note, AT&T's business was highly valuable to Respondent and represented a large portion of its income.

14.     At the time Robinson was hired, Respondent put him, and another construction manager, John Horn, in charge of its Indianapolis, Indiana facility.  Part of this position was checking company vehicles, putting in maintenance orders, and assigning those vehicles to Respondent's employees.

15.     On or about January 21, 2022, Robinson had to take time off from work to travel to the Roudebush VA Medical Center to treat his disability.  Respondent was aware of the reason for Robinson's absence.  Prior to this appointment, and on or about January 18, 2022, Robinson made his supervisor, Angela Bickell ("Bickell"), and Regional Director, Jason Wall ("Wall"), aware of his need to treat his disabling condition through the medical care he would receive during this appointment.  He went so far as to inform them that he would be receiving a large shot of medicated gel in his knee to help the healing process and combat inflammation.

16.     The following Monday, January 24, 2022, Robinson informed Bickell that he had the large needle put into his knee and a large amount of medical gel inserted.  He also informed her that the gel was intended to aid in his recovery from his disabling condition.

17.     On or about January 25, 2022, Robinson travelled to a companywide training at a hotel on the Northside of Indianapolis, Indiana.  Robinson travelled to this training with another employee of Respondent.  Once at the hotel, Robinson's fellow employee tried to help Robinson by getting a wheelchair, which ended up being too small to be effective.  Robinson then used his crutches to walk through the hotel, to the second floor, and into the class.

18. Once in the training session, Robinson sat directly behind Bickell, who turned around and acknowledged him. Robinson quickly noted that several other employees of Respondent were present remotely via Zoom or Microsoft Teams. The presenter, Kerry Smith, asked Robinson why he was at the meeting because he was part of management. Kerry then informed Robinson that the training was for work crew employees, not managerial employees, and that she would be at the Indianapolis, Indiana office the following week to train the managers.

19. After the training concluded, Robinson was helped to his truck by the same co-worker who provided assistance earlier. That very same co-worker also indicated that he would help Robinson the following day should there be a need.

20. That evening and night, Robinson's knee became enflamed and began to leak the medicated gel that had been injected the prior Friday. Early the next morning, January 26, 2022, Robinson called Bickell and asked for the very reasonable accommodation of not attending that day's non-mandatory training session in person. He reminded her of the medical procedure he had underwent the prior Friday. Robinson indicated that others were permitted to attend by Zoom and/or Teams, that his disability had flared up due to his attendance, and that he could attend / participate via Zoom and/or Microsoft Teams. Bickell refused to allow Robinson to attend remotely and demanded that he be there in person. Bickell therefore denied Robinson's reasonable accommodation. Further, Bickell did not engage in the interactive process and provide any other potential accommodation to Robinson.

21. Robinson's request for a reasonable accommodation for his disabling condition is statutorily protected conduct under the ADA.

22. Later that morning, Robinson was on a telephone call / meeting with: 1) Robert McKinney (AT&T); 2) Steve Adamson (AT&T); Vincent Beckholt (AT&T); Kendall Faulkner (Respondent); and John Horn (Respondent). The meeting ended and both Faulkner and Horn left the call. Right then the AT&T attendees asked an additional question, which Robinson heard so he stayed on the line. While listening to the AT&T attendees, Robinson heard Steve Adamson refer to Faulkner as a clown. Robinson got off of the call and texted / called Faulkner to discuss what had happened.

23. Robinson reasonably believed that the comment referring to Faulkner as a clown, made by Steve Adamson, was racially motivated.

24. Robinson was later asked by Wall to provide a statement regarding the earlier AT&T racist comment. Robinson provided a written statement to several employees of Respondent, including Wall.

25. Robinson was then contacted by two members of Respondent's human resources team ("HR"). Respondent's HR questioned Robinson about his statement. In doing so, Respondent's HR attempted to get Robinson to make allegations against Faulkner, essentially blaming Faulkner for being called a racially charged term. Robinson engaged with Respondent's HR and repeatedly referred to his prior statement. The call was ended.

26. Robinson's reporting of, and continued opposition to, what he reasonably believed was racial discrimination is statutorily protected conduct under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

27. On or about January 31, 2022, Robinson received another call from Respondent's HR. This call focused on the vehicles in Respondent's Indianapolis yard. Respondent's HR questioned Robinson on why someone had taken pictures of the vehicles

over the weekend. Robinson informed them that he had a sub-contractor take pictures of the vehicles for him as he was incapable of traveling to the facility at that time.

28. On or about February 1, 2022, Bickell came into Robinson's office with Kerry Smith (trainer). Once inside, Bickell placed her phone on the table and indicated that HR was on the call and that Robinson was present. Robinson was then terminated for not attending the training on January 25 and 26, 2022.

29. Respondent took adverse employment actions against Robinson due to his race and/or statutorily protected activity, both in violation of Title VII.

30. Respondent has accorded more favorable treatment to similarly situated employees, who are not African-American and/or have not engaged in statutorily protected conduct.

31. Respondent took adverse employment actions against Robinson due to his disability, history of disability, or that he was regarded as disabled, in violation of the ADA.

32. Respondent took adverse employment actions against Robinson due to his statutorily protected conduct of requesting a reasonable accommodation for his disabling condition.

33. Respondent failed to provide Robinson with a reasonable accommodation for his disabling condition after he requested such an accommodation. Further, Respondent failed to engage in the interactive process as required by the ADA.

34. Any reason provided by Respondent for the adverse actions it has taken against Robinson are mere pretext for discrimination.

35. Respondent's actions have violated Robinson's rights as protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Americans With Disabilities Act.

### COUNT I - RACE DISCRIMINATION – TITLE VII

36. Robinson hereby incorporates paragraphs 1-35 of his Complaint and Jury Demand.

37. Respondent fired Robinson because of his race.

38. Respondent's unlawful actions were intentional, willful, and done in reckless disregard of Robinson's rights as protected by Title VII.

### COUNT II - RACE DISCRIMINATION - 42 U.S.C. § 1981

39. Robinson hereby incorporates paragraphs 1-38 of his Complaint and Jury Demand.

40. Respondent fired Robinson because of his race.

41. Respondent's unlawful actions were intentional, willful, and done in reckless disregard of Robinson' rights as protected by 42 U.S.C. § 1981.

### COUNT III - RETALIATION – TITLE VII and 42 U.S.C. § 1981

42. Robinson hereby incorporates paragraphs 1-41 of his Complaint and Jury Demand.

43. Robinson engaged in statutorily-protected conduct.

44. Respondent fired Robinson because of his statutorily-protected conduct.

45. Respondent's unlawful actions were intentional, willful, and done in reckless disregard of Robinson' rights as protected by Title VII and 42 U.S.C. § 1981.

### COUNT IV – DISABILITY DISCRIMINATION – ADA

46. Robinson hereby incorporates paragraphs 1-45 of his Complaint and Jury Demand.

47. Robinson asked for a reasonable accommodation.

48. Respondent did not provide a reasonable accommodation to Robinson in or about January, 2022.  Respondent did not engage in the interactive process with Robinson in or about January, 2022.

49. Instead, Respondent used the requested accommodation against Robinson.

50. Respondent's unlawful actions were intentional, willful, and done in reckless disregard of Robinson's rights as protected by the ADA.

## COUNT V – DISABILITY DISCRIMINATION - ADA

51. Robinson hereby incorporates paragraphs 1-50 of his Complaint and Jury Demand.

52. Respondent fired Robinson because of his disability, record of a disability, and/or its perception of him being disabled.

53. Respondent's unlawful actions were intentional, willful, and done in reckless disregard of Robinson's rights as protected by the ADA.

## COUNT VI – RETALIATION - ADA

54. Robinson hereby incorporates paragraphs 1-53 of his Complaint and Jury Demand.

55. Robinson engaged in statutorily-protected activities.

56. Respondent fired Robinson because of his statutorily-protected activities.

57. Respondent's unlawful actions were intentional, willful, and done in reckless disregard of Robinson's rights as protected by the ADA.

## REQUESTED RELIEF

WHEREFORE, Claimant, Stephen Robinson, by counsel, respectfully requests that this Court find for him and order that:

1. Respondent pay lost wages and benefits to Robinson;

2. Respondent reinstate Robinson to the same position, with the requisite pay, seniority, and benefits, or pay front pay and benefits to him in lieu of reinstatement;

3. Respondent pay compensatory and punitive damages to Robinson;

4. Respondent pay pre- and post-judgment interest to Robinson;

5. Respondent pay Robinson's attorneys' fees and costs incurred in litigating this action; and

6. Respondent pay to Robinson any and all other legal and/or equitable damages that this Court determines appropriate and just to grant.

    Respectfully submitted,

    /s/ Bradley L. Wilson
    Bradley L. Wilson, Attorney No. 21154-49

    /s/ Shannon L. Melton
    Shannon L. Melton, Attorney No. 29380-49

    Attorneys for Claimant
    Stephen Robinson

WILSON MELTON, LLC
5226 South East Street, Suite A-5
Indianapolis, Indiana 46227
Telephone: (317) 802-7181
Email: bwilson@wilsonmelton.com
       smelton@wilsonmelton.com

## **DEMAND FOR JURY TRIAL**

Plaintiff, Stephen Robinson, by counsel, respectfully requests a jury trial for all issues deemed triable.

    Respectfully submitted,

    /s/ Shannon L. Melton
    Shannon L. Melton, Attorney No. 29380-49

    Attorneys for Plaintiff
    Stephen Robinson